**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lisa Ann ROHN, a/k/a Shenna Joyce Fror, a/k/a Stacy L. Miller, a/k/a Cindy Ann Talbot, a/k/a Dorene R. Davenport, a/k/a Johnnie Elaine Miller, a/k/a Mary Elizabeth Baker, a/k/a Doreen Dona Breslin, a/k/a Shauna Joy William, a/k/a Carol Ann Harris, a/k/a Lisa Ann Miller, a/k/a Lisa Rohn Miller, a/k/a Johnalee Erma Smitter, a/k/a Elaine Paulson, a/k/a Mary Anderson, a/k/a Karen S. Ali, a/k/a Cheryl Lewis, a/k/a Doreen Bowden, a/k/a Regina M. Goldberg, a/k/a Mary Lynn Reynolds, a/k/a Barbara Ann Heuning, Defendant–Appellant.**

No. 91–5846.

United States Court of Appeals,
Fourth Circuit.

Argued March 5, 1992.

Decided May 5, 1992.

Michael T. CitaraManis, Asst. Federal Public Defender, Baltimore, Md., argued (Fred Warren Bennett, Federal Public Defender, on brief), for defendant-appellant.

Barbara Slaymaker Sale, Asst. U.S. Atty., Baltimore, Md., argued (Richard D. Bennett, U.S. Atty., on brief), for plaintiff-appellee.

Before RUSSELL and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

WILKINSON, Circuit Judge:

Appellant Lisa Rohn was convicted of knowingly possessing, with intent to use unlawfully, five or more false identification documents in violation of 18 U.S.C. § 1028(a)(3). Because the jury was not provided any basis in the instructions from which it could conclude that Rohn's intended use of the documents she possessed was unlawful, we reverse her conviction.

## I.

Roger Paulson met Lisa Rohn, who called herself "Johnnie Elaine Miller," through a personal advertisement he

placed in *Washingtonian* magazine. Paulson and Rohn corresponded and then dated, and in March 1991 Rohn moved into Paulson's apartment in Beltsville, Maryland. In January 1991, appellant obtained employment as a receptionist at a suburban Maryland accounting firm. On her employment application and W–4 tax withholding form, Rohn listed her name as Miller and gave Miller's social security number.

On April 24, 1991, while Rohn was at work, Paulson decided to clean up the apartment. As he attempted to place one of Rohn's briefcases on a closet shelf, it fell, struck him on the head, and popped open, spilling some of its contents onto the floor. When Paulson looked at the contents of the briefcase, he saw numerous forms of identification, which bore Rohn's photograph but a variety of other names. Paulson then turned over the contents of the briefcase to the Federal Bureau of Investigation.

In the afternoon of April 24th, a warrant was issued for appellant's arrest. She was arrested at her place of employment after attempting to escape. While in custody, she was identified as Lisa Ann Rohn. At the time that Rohn was arrested, she was wanted on two outstanding warrants in Arlington, Virginia, that dated from November 1986.

Rohn was charged with violating 18 U.S.C. § 1028(a)(3), which prohibits "knowingly possess[ing] with intent to use unlawfully ... five or more identification documents (other than those issued lawfully for the use of the possessor) or false identification documents," 18 U.S.C. § 1028(a)(3), when the possession "is in or affects interstate or foreign commerce," *id.* § 1028(c)(3). At trial, over seventy pieces of identification from the briefcase were admitted in evidence. They included social security cards in four different names, five different District of Columbia identification cards or driver's licenses, five different California identification cards or driver's

licenses, four different Virginia driver's licenses, four different birth certificates, and numerous bank cards, student identification cards, employment identification cards, membership cards, etc. In all, there were driver's licenses or identification cards in thirteen different names.

After the jury had begun its deliberations, it presented the court a note inquiring whether fleeing to avoid arrest was itself unlawful. After consulting with counsel at length, the district court—relying on 18 U.S.C. § 1073 [1]—responded to the jury as follows: "Yes—it is a violation of federal law to travel or move in interstate commerce with intent to avoid prosecution for a felony under the laws of the place from which one flees." Less than an hour later, the jury returned a verdict of guilty.

Appellant then filed a timely notice of appeal.

## II.

Congress adopted the False Identification Crime Control Act of 1982, Pub.L. No. 97–398, 96 Stat. 2009, of which 18 U.S.C. § 1028(a)(3) is a part, to create federal offenses relating to possession of false identification documents, counterfeiting of identification documents, and trafficking in such documents. *See* H.R.Rep. No. 802, 97th Cong., 2d Sess. 1, *reprinted in* 1982 U.S.Code Cong. & Admin.News 3519, 3519. In creating the § 1028(a)(3) offense, Congress could have criminalized mere possession of false identifications. It did not, however, write the statute in this way. Rather, an essential element of the offense Congress created is an "intent to use unlawfully" the false identifications possessed. 18 U.S.C. § 1028(a)(3). Accordingly, as the legislative history makes clear, possession of five or more false identifications violates § 1028(a)(3) *only* when the intended use of the documents would "violate[ ] a federal, state or local law, or [be]

---

1. Section 1073 reads in pertinent part:
   Whoever moves or travels in interstate or foreign commerce with intent ... to avoid prosecution ... under the laws of the place from which he flees, for a crime, or an at-

tempt to commit a crime, punishable by death or which is a felony under the laws of the place from which the fugitive flees, ... shall be fined not more than $5,000 or imprisoned not more than five years, or both.

part of the making of a misrepresentation that violates a law." H.R.Rep. No. 802, 97th Cong., 2d Sess. 10, *reprinted in* 1982 U.S.Code. Cong. & Admin.News 3519, 3529. Thus, to enable the jury to conclude that a defendant intended to use false identifications unlawfully, the government is required to establish two things: first, the uses to which appellant intended to put the false identifications; and, second, that those intended uses would violate one or more federal, state, or local laws.[2]

The sole issue raised on appeal is whether these two criteria were satisfied. As to the first, the government suggested in its closing argument that appellant's intended uses included, for example, presentation of a false driver's license if she were ever stopped by a police officer for a traffic offense and use of a false identification if she were ever required to fill out government tax forms. The government was not required to present more concrete evidence than this as to the uses to which appellant intended to put the documents. Because intent is "rarely capable of direct proof," *United States v. Johnson,* 767 F.2d 673, 676 (10th Cir.1985) (internal quotations omitted), "[a] defendant's intent can be inferred from his conduct and all the surrounding circumstances," *United States v. Vigil–Montanel,* 753 F.2d 996, 999 (11th Cir.1985). Based on the fact that appellant was living all aspects of her life, both work and home, under an assumed identity in an attempt to evade arrest on the outstanding warrants, the jury was certainly entitled to conclude that she would have acted to maintain that identity—and thus would have used her false identifications—in all circumstances that called for her to identify herself.

■ The problem with the government's case, however, relates to the statute's second requirement that the intended uses be unlawful. The government—urging the ju-

rors not "to check [their] common sense at the door of the jury room"—suggested at trial that Rohn intended unlawful uses because there were no "possible lawful uses for phony identifications." This, we think, is an insufficient basis for the jury to conclude that the appellant's intended uses were unlawful. In effect, the government's argument represented an impermissible effort to shift the burden of proof to appellant: The message of the government's assertion was that the government need not actually show an unlawful use because Rohn had not demonstrated a lawful one. As we noted above, Congress could have written the statute in this manner, but it did not; as enacted, § 1028(a)(3) places an affirmative burden on the government to demonstrate that one of appellant's intended uses for the false identifications was unlawful.

■ This the government failed to do. The only law cited to the jury by the district court upon which it could have found an intended use to be unlawful was 18 U.S.C. § 1073, which criminalizes interstate flight from a felony. The government, however, presented no evidence at trial that the outstanding warrants from which appellant was fleeing were for felony charges. As a result, the jury was not entitled to rely on § 1073 in making its determination that the intended uses for the documents were unlawful. Indeed, before this court the government does not contend that the instruction relating to § 1073 was sufficient to support the verdict.

■ The government does suggest that the conviction should be affirmed nonetheless because the district court was not required to cite for the jury a particular law that appellant's intended uses would have violated. We disagree. Both the text of § 1028(a)(3) and its legislative history clearly evince Congress' intention that, in a

---

**2.** There are other federal criminal statutes that are written in a similar manner. *See* 18 U.S.C. §§ 1012, 1386(a)(2)(B), 1426(c), 1704, 2197. Most federal criminal statutes that contain an intent element, however, require the government to prove only that the defendant intended to undertake certain conduct—not the addition-

al element that the intended conduct be proscribed by some other law. *See, e.g.,* 21 U.S.C. § 841(a)(1) ("[I]t shall be unlawful for any person knowingly or intentionally ... [to] possess with intent to ... distribute ... a controlled substance.").

prosecution under that provision, the government must show that a defendant's intended use would have been unlawful. Unlawfulness is determined not by reference to abstract notions of right and wrong, but to standards prescribed by appropriate lawmaking bodies. To demonstrate unlawfulness, it is necessary that the jury be instructed by the district court that particular conduct would have violated a specific law. The jury should not be permitted, as it was here, to rely on "common sense" as to what conduct is unlawful or on a generalized belief that a defendant was up to no good. Here this requirement of demonstrating the unlawfulness of the intended conduct could have been satisfied by, for example, an instruction that presenting a false driver's license to a police officer violates a law of a state in which appellant could be expected to drive. *See, e.g.,* Va.Code Ann. §§ 18.2–204.1(B), 18.2–204.2 (Michie 1988 & Supp.1991). No such instruction having been given, the jury had no basis on which to conclude that any of appellant's intended uses for the documents would have been unlawful. Her conviction, therefore, simply cannot stand.[3]

### III.

Here the government wishes to convict Rohn under a statute Congress did not write. The statute as written requires that in a prosecution for knowingly possessing, with intent to use unlawfully, five or more false identification documents, the jury must be provided some basis in the instructions from which it could conclude that the defendant's intended use for the documents would have violated a particular federal, state, or local law. Although such a requirement may be characterized as technical, the plain language and legislative history of 18 U.S.C. § 1028(a)(3) make clear

that Congress intended it to be an essential element of the offense of which appellant was convicted. Because this element was not satisfied here, appellant's conviction must be overturned.

REVERSED.

---

**3.** We wish to make clear the limits of our holding here. Contrary to the government's argument, our holding does not confuse intended use with actual use. Under § 1028(a)(3), the government need not establish that a use to which a defendant *actually* put the documents violated some other law; it must establish only that the defendant's *intended* use *would have* violated some law. Moreover, as our discussion

above indicates, the jury may infer that a particular use was intended based solely on circumstantial evidence.

We also do not hold that the government must prove that Rohn had specific knowledge that her intended use of the false identifications was contrary to law. We require only that the government demonstrate the unlawfulness of that use.