RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0041p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ALEKSANDR GRIGORYEVICH YEREMIN,
  *Petitioner,*

  *v.*

ERIC H. HOLDER, JR., Attorney General,
  *Respondent.*

Nos. 10-4525/11-3975

On Petition for Review of a Final Order of
the Board of Immigration Appeals;
No. A046 792 869.

Argued: December 7, 2012

Decided and Filed: February 14, 2013

Before: MOORE and COOK, Circuit Judges; BERTELSMAN, District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** Maris J. Liss, GEORGE P. MANN & ASSOCIATES, P.C., Farmington Hills, Michigan, for Petitioner. Rachel Browning, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Maris J. Liss, George P. Mann, GEORGE P. MANN & ASSOCIATES, P.C., Farmington Hills, Michigan, for Petitioner. Rachel Browning, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge. In 2004, Petitioner Aleksandr Yeremin ("Yeremin"), a Russian citizen, pleaded guilty to and was convicted of one count under 18 U.S.C. § 1028(f), for conspiracy to traffic in identification documents in

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

violation of § 1028(a)(3). Section 1028(a)(3) prohibits knowingly possessing with intent to use unlawfully or transfer unlawfully five or more identification documents or false identification documents. As a result of this conviction, the Department of Homeland Security ("DHS") initiated removal proceedings, asserting that Yeremin was removable for having been convicted of a crime involving moral turpitude within five years of admission to the United States. Yeremin moved to terminate the removal proceedings, but the Immigration Judge ("IJ") found that Yeremin's conviction was for an offense qualifying as a crime involving moral turpitude and ordered that Yeremin be removed to Russia. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision and denied Yeremin's subsequent motion to reconsider. Yeremin petitioned this court for review of both the BIA's decision upholding the IJ's determination and its decision denying reconsideration. Under the categorical approach applied by this court, Yeremin's conviction qualifies as a crime involving moral turpitude because the conduct prohibited by the statute he was convicted under inherently involves deceit. Yeremin is thus removable, and accordingly, we **DENY** Yeremin's petitions for review.

## I. BACKGROUND

Yeremin is a Russian citizen who lawfully entered the United States on or about February 3, 1999. *See* Certified Administrative Record ("C.A.R.")[1] at 461 (Notice to Appear at 3). In 2003, Yeremin was indicted for his alleged participation in a "scheme to assist others to fraudulently obtain Michigan driver's licenses using other fraudulent identification documents." C.A.R. at 65 (Plea Agmt. at 1); *see* C.A.R. at 115–21 (Indictment). On July 6, 2004, Yeremin pleaded guilty in the U.S. District Court for the Southern District of New York to a single count under 18 U.S.C. § 1028(f), for conspiracy to traffic in fraudulent identification documents in violation of 18 U.S.C. § 1028(a)(3). *See* C.A.R. at 445 (Judgment at 1). This underlying offense, § 1028(a)(3), prohibits "knowingly possess[ing] with intent to use unlawfully or transfer unlawfully five or more identification documents (other than those issued lawfully for the use of the

---

[1]This opinion uses "C.A.R." to refer to the administrative record filed in Yeremin's first petition, Case No. 10-4525. The administrative record filed in connection with Yeremin's second petition, Case No. 11-3975, will be referred to as "C.A.R. II."

possessor), authentication features, or false identification documents."  18 U.S.C. § 1028(a)(3).  The plea agreement in the case stated that the Government "will accept a guilty plea" from Yeremin "to Count One" of the indictment, and that:

> [t]he offense of conviction involved the (i) unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, and (ii) the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification.

C.A.R. at 65–66 (Plea Agmt. at 1–2).  A person convicted under § 1028(f) is subject to the same penalties as those prescribed for the § 1028(a) offense, *see* § 1028(f), which can include imprisonment of one year or more, *see* 18 U.S.C. § 1028(b).  Yeremin was sentenced to five months of imprisonment followed by two years of supervised release.  C.A.R. at 446–47 (Judgment at 2–3).

On January 26, 2005, DHS initiated removal proceedings, charging Yeremin as subject to two grounds for removal under the Immigration and Nationality Act ("INA").  DHS asserted that Yeremin was removable first under 8 U.S.C. § 1227(a)(2)(A)(i), which allows removal of aliens convicted of a crime involving moral turpitude committed within five years of admission to the United States, if the crime is punishable by at least one year in prison, and second under 8 U.S.C. § 1227(a)(2)(A)(iii), which allows removal of any alien convicted of an aggravated felony at any time after admission to the United States.  *See* C.A.R. at 461 (Notice to Appear at 3).  Although the IJ initially found Yeremin removable under the aggravated-felony charge, *see* C.A.R. at 170 (Jan. 26, 2005 Hr'g Tr. at 12), she ultimately withdrew this finding after a remand from the BIA, *see* C.A.R. at 159 (IJ Dec. at 2 n.1); 247 (Nov. 14, 2005 BIA Dec. at 2).

Regarding the charge of removability relating to the prior conviction for a crime involving moral turpitude, Yeremin moved to terminate the proceedings on the basis that his conviction did not involve moral turpitude, arguing that he did not plead guilty to an offense which necessarily involved fraudulent or deceptive conduct.  *See* C.A.R. at 211 (Br. in Support of Renewed Mot. to Terminate at 4).  The IJ denied the motion, and ordered that Yeremin be deported because she found that Yeremin's conviction was for

an offense that inherently involved fraud, and thus that it was a crime involving moral turpitude. *See* C.A.R. at 159 (IJ Dec. at 2) ("While the statute does not contain the term 'fraud', the inherent nature of the offense involves fraud."). The BIA affirmed the IJ's decision on November 5, 2010, agreeing with the IJ that "the inherent nature of the underlying offense clearly involves fraud." C.A.R. at 76 (Nov. 5, 2010 BIA Dec. at 2). Yeremin petitioned this court for review of the BIA's decision on December 3, 2010.

The same day, December 3, 2010, Yeremin also moved for reconsideration of the BIA's decision affirming the IJ's denial of his motion to terminate the proceedings against him. *See* C.A.R. at 14 (Mot. to Recon.). The BIA denied the motion to reconsider, and on September 14, 2011, Yeremin petitioned this court for review of the BIA's denial of the motion. Yeremin's two petitions have been consolidated for review by this court.

## II.  JURISDICTION

In this case, the IJ found that Yeremin was removable under the provision of the INA permitting removal of any alien who is convicted of a crime involving moral turpitude that was committed within five years of his or her admission to the United States, and for which a sentence of at least one year may be imposed. *See* 8 U.S.C. § 1227(a)(2)(A)(i). In general, "we lack jurisdiction to review the removal orders of petitioners deemed removable for having committed a [crime involving moral turpitude]." *Ruiz-Lopez v. Holder*, 682 F.3d 513, 516 (6th Cir. 2012). However, we retain "limited jurisdiction to review questions of law and constitutional claims arising from such orders." *Id.* (citing 8 U.S.C. § 1252(a)(2)(D)); *see Serrato-Soto v. Holder*, 570 F.3d 686, 688 (6th Cir. 2009). The determination of whether a conviction under a particular statute qualifies as a crime involving moral turpitude is a question of law and thus is subject to judicial review. *See Ruiz-Lopez*, 682 F.3d at 516. If we conclude that the BIA properly determined that Yeremin was removable for conviction of a crime involving moral turpitude, then we lack further jurisdiction to review the order of removal. *See Kellermann v. Holder*, 592 F.3d 700, 702 (6th Cir. 2010) (citing 8 U.S.C. § 1252(a)(2)(C)).

We also have jurisdiction to review denials by the BIA of motions to reconsider. *See Stone v. INS*, 514 U.S. 386, 405–06 (1995) (explaining that BIA decisions on motions to reconsider are reviewable); *see, e.g.*, *Sswajje v. Ashcroft*, 350 F.3d 528, 532–33 (6th Cir. 2003) (reviewing for abuse of discretion the BIA's denial of a motion to reconsider).

## III.  ANALYSIS

### A.  Standard of Review

"Where, as here, 'the BIA expressly adopts and affirms the IJ's decision but adds comments of its own, we directly review the decision of the IJ while also considering the additional comments made by the [BIA].'" *Serrato-Soto*, 570 F.3d at 688 (quoting *Elias v. Gonzales*, 490 F.3d 444, 449 (6th Cir. 2007)).  The BIA's construction of an ambiguous term in the INA is afforded *Chevron* deference, which means the BIA's construction will be upheld so long as it is reasonable. *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 908–09 (6th Cir. 2008); *see Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843–44 (1984).  This includes the BIA's interpretation of the meaning of "crime involving moral turpitude," as that term is used in the INA. *See Kellermann*, 592 F.3d at 702–03.  However, de novo review applies to the determination of "whether the elements of a federal crime fit the BIA's definition of a [crime involving moral turpitude]." *Id.* at 703.

### B.  Legal Principles

The term "crime involving moral turpitude" is not defined in the INA or by agency regulations.  The term "'refers generally to conduct that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.'" *Id.* (quoting *Singh v. Holder*, 321 F. App'x 473, 477 (6th Cir. 2009)).  "Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind." *In re Ajami*, 22 I. & N. Dec. 949, 950 (BIA 1999).  The BIA has held that "[w]here knowing or intentional conduct is an element of an offense, we have found moral turpitude to be

present." *In re Perez-Contreras*, 20 I. & N. Dec. 615, 618 (BIA 1992); *see In re Serna*, 20 I. & N. Dec. 579, 581 (BIA 1992) (stating that whether an offense is a crime involving moral turpitude is "a question of the offender's evil intent or corruption of the mind").

Crimes that involve deception or fraud consistently are held to qualify as crimes involving moral turpitude. For example, if a crime requires proof of a specific intent to defraud, then it is a crime involving moral turpitude. *See Serrato-Soto*, 570 F.3d at 689. "[F]raud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude." *Jordan v. De George*, 341 U.S. 223, 229 (1951); *see Omagah v. Ashcroft*, 288 F.3d 254, 260 (5th Cir. 2002) (noting that following *Jordan*, "the courts of appeals have interpreted 'moral turpitude' as including a wide variety of crimes that involve some fraud or deceit"). Further, even if the statute does not explicitly require an intent to defraud or use the language of fraud, if fraud or deception is inherent in the nature of the offense, then the crime involves moral turpitude. *See In re Flores*, 17 I. & N. Dec. 225, 228 (BIA 1980). For example, in *Flores*, the BIA considered a conviction for "uttering or selling false or counterfeit paper relating to registry of aliens with knowledge of their counterfeit nature." *Id.* at 230. The BIA concluded that the offense "inherently involves a deliberate deception of the government and an impairment of its lawful functions," and that therefore "fraudulent conduct is implicit in the statute," even absent a requirement of a specific intent to defraud. *Id.* The BIA explained that the government need not have been defrauded out of money or property for moral turpitude to be involved; rather, "[i]t is enough to impair or obstruct an important function of a department of the government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means." *Id.* at 229.

In determining whether a conviction under a federal statute fits the BIA's definition of a crime involving moral turpitude, we apply what are known as the categorical and modified-categorical approaches. *See Ruiz-Lopez*, 682 F.3d at 518; *see generally Shepard v. United States*, 544 U.S. 13 (2005); *Taylor v. United States*,

495 U.S. 575, 600–01 (1990). First, the categorical approach is applied, in which we consider "whether the full range of conduct encompassed by the statute constitutes a crime of moral turpitude." *Serrato-Soto*, 570 F.3d at 689 (internal quotation marks omitted). We thus look to the elements of the offense, rather than the underlying facts of the specific case. *See id.* at 690. If the full range of conduct encompassed by the statute constitutes a crime of moral turpitude, then the conviction is for an offense qualifying as a crime involving moral turpitude. *United States v. Castillo-Rivera*, 244 F.3d 1020, 1022 (9th Cir. 2001); *see Ruiz-Lopez*, 682 F.3d at 518.

If we find that the scope of the statute includes some conduct that involves moral turpitude and other conduct that does not, we apply the modified-categorical approach. *See Kellermann*, 592 F.3d at 704. The modified-categorical approach involves looking to a limited set of court documents that are part of the record of conviction, including the charging document, plea agreement, and transcript of plea colloquy, to determine whether the specific offense for which the petitioner was convicted qualifies as a crime involving moral turpitude. *See United States v. Montanez*, 442 F.3d 485, 489 (6th Cir. 2006); *see also Shepard*, 544 U.S. at 16 (limiting the types of documents a court may consider in determining the character of a prior conviction).

## C.  Application to Yeremin's Petition

Yeremin was convicted of conspiring to traffic in identification documents in violation of § 1028(a)(3). By its statutory language, this offense requires that the offender "knowingly possess[]" the relevant identification documents. *See* § 1028(a)(3). Courts also have interpreted this statutory provision to require proof of an intent to use or transfer the identification documents or false identification documents unlawfully. *See United States v. Klopf*, 423 F.3d 1228, 1236 (11th Cir. 2005); *United States v. Kayode*, 254 F.3d 204, 214 (D.C. Cir. 2001); *United States v. Rohn*, 964 F.2d 310, 313–14 (4th Cir. 1992).

On appeal, Yeremin argues that the intent to use or transfer unlawfully does not necessarily require fraud or deceit. *See* Pet. Br. (Case No. 10-4525) at 19. This argument is not persuasive. The offense requires knowing possession of multiple

identification documents which either (i) were not lawfully issued to the possessor, *see* § 1028(a)(3), or (ii) were altered for the purposes of deceit or not issued under the authority of a governmental entity.**2** *See* § 1028(d)(4) (defining "false identification document"). If the possessor intends to use or transfer those documents in a way that violates a local, state, or federal law, it is difficult to understand how the intended use or transfer would not deceive the government and impair the effectiveness of its identification scheme. *See Flores*, 17 I. & N. Dec. at 229 (holding that moral turpitude is involved when the offender intentionally impairs the efficiency of a governmental program through deceit). The House Report discussing § 1028(a), which is part of the False Identification Crime Control Act of 1982, supports this understanding. The Report contemplates that

> [t]he intent to use unlawfully is the intent to use (i.e., present, display, certify, or otherwise give currency to) the identification document in any manner so that it would be accepted as identification in a manner that violates a federal, state or local law, or is part of the making of a misrepresentation that violates a law.

H.R. REP. NO. 97-802, at 10 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3519, 3529. In this way, any intentional unlawful use or transfer of multiple identification documents whose purpose is to identify individuals to government authorities would inherently be intended to deceive the government in some way. *See Serrato-Soto*, 570 F.3d at 690 (holding that where a statute requires knowing or willful use of an altered or counterfeit Social Security number, the offense in the ordinary case "involves dishonesty as an essential element").

The BIA's analysis in *Matter of Serna* further supports this conclusion. In *Serna*, the BIA discussed a conviction for knowingly possessing an altered immigration document. *See* 20 I. & N. Dec. at 580. In contrast to § 1028(a)(3), the statute at issue

---

**2**Yeremin's argument that it makes a difference whether the documents involved are "identification documents" as opposed to "false identification documents" is likewise unpersuasive. Even if the documents at issue were not false, as Yeremin contends, *see* Pet. Br. (Case No. 10-4525) at 18, conviction under the statute would still require that the identification documents were not lawfully issued to the possessor, and that Yeremin intended to use or transfer the documents unlawfully. *See* § 1028(a)(3). As explained above, such an intention to use or transfer unlawfully multiple identification documents involves just as much deceit as the use or transfer of false identification documents.

in *Serna* did not require an intent to use or transfer the documents unlawfully. The BIA held that mere possession of the altered document, even with the knowledge that it was altered, was not a crime involving moral turpitude, because there might be circumstances in which a defendant could be convicted but "not have had the intent to use the altered immigration document in his possession unlawfully." *Id.* at 586. In Yeremin's case, these circumstances are not possible, because conviction under § 1028(a)(3) always requires an intent to use or transfer the documents unlawfully. *See* § 1028(a)(3). Under the rationale of *Serna*, a conviction under § 1028(a)(3) necessarily entails an evil intent, i.e., the intent to use identification documents unlawfully, and thus it qualifies as a crime involving moral turpitude. *See Omagah*, 288 F.3d at 261 (affirming the BIA's conclusion that "conspiracy to possess forged immigration documents with intent to use them involved moral turpitude").

The Seventh Circuit's decision in *Lagunas-Salgado v. Holder*, 584 F.3d 707 (7th Cir. 2009), is also instructive. The *Lagunas-Salgado* court determined that a conviction under § 1028(a)(2), which prohibits knowingly transferring an identification document with knowledge that it was stolen or illegally produced, inherently involved deceptive conduct, and therefore it constituted a crime involving moral turpitude. *See id.* at 712. This was so even though the statute of conviction did not require proof that the defendant presented the identification document to the government. *Id.* The Seventh Circuit held that because the statute required more than mere knowing possession of the identification documents, the BIA reasonably concluded that moral turpitude was involved. *See id.* Other courts and the BIA similarly have found that subsections of § 1028(a) are crimes involving moral turpitude, even absent an explicit requirement of an intent to defraud. *See Stevenson v. INS*, 246 F.3d 676, No. 97-71406, 2000 WL 1878964, at *2 (9th Cir. Dec. 27, 2000) (conviction under § 1028(a)(2)); *Babafunmi v. U.S. INS*, 210 F.3d 360, No. 99-2312, 2000 WL 338987, at *1 (4th Cir. Mar. 31, 2000) (conviction under § 1028(a)(5), which prohibits possession of a document-making implement "with the intent such document-making implement . . . will be used in the production of a false identification document"); *In re Hen*, No. A079 440 615, 2010 WL 5635607 (BIA Dec. 30, 2010) (conviction for aiding and abetting a violation of

§ 1028(a)(1), which prohibits knowingly producing an identification document without lawful authority).  These cases support the proposition that moral turpitude is involved when a statute of conviction requires knowing possession of unlawfully possessed or false identification documents, combined with a corrupt intent to use or transfer the documents unlawfully.  Accordingly, we hold that conviction under § 1028(a)(3) inherently involves deceptive conduct, and therefore that Yeremin's conviction constituted a crime involving moral turpitude.

Yeremin additionally argues that the IJ erred by looking to the indictment to determine whether his conviction constituted a crime involving moral turpitude.  *See* Pet. Br. (Case No. 10-4525) at 22–23.  Citing *United States v. Bernal-Aveja*, 414 F.3d 625 (6th Cir. 2005), Yeremin argues that the IJ erroneously relied on alleged facts relating to fraud in the indictment to which Yeremin did not admit in the plea agreement.  Our holding in *Bernal-Aveja* was that information contained in an indictment is not by itself sufficient to establish whether a conviction was for a crime of violence, when the defendant pleaded guilty to a different offense than that charged in the indictment. 414 F.3d at 628.  First, this holding is not directly applicable to Yeremin's case, because Yeremin was convicted under the same statute as that charged in the indictment.

More significantly, Yeremin's argument misinterprets the overall rationale of the IJ's decision.  The IJ looked to the language of the statute under which Yeremin was convicted, and concluded that "the inherent nature of the offense involves fraud." C.A.R. at 159 (IJ Dec. at 2).  The BIA affirmed the decision on this basis, finding that "the inherent nature of the underlying offense clearly involves fraud."  C.A.R. at 76 (Nov. 5, 2010 BIA Dec. at 2).  The use of the phrase "inherent nature," along with citations to *Matter of Flores*, implies that the IJ and BIA concluded that *all* convictions under § 1028(a)(3) are inherently deceptive, i.e., the decisions used the categorical approach and focused on the elements of the statute.  To the extent that the IJ subsequently looked to the indictment, it appears that this was only further to confirm the conclusion that the offense of conviction involved fraud—we do not read the IJ's citation of language from the indictment, such as "fraudulently obtained driver's

licenses," as critical to the IJ's overall analysis. *See* C.A.R. at 160 (IJ Dec. at 3). Accordingly, we reject Yeremin's argument that the IJ committed reversible error by looking to the indictment regarding the basic facts surrounding the conviction. Further, under our precedent, the categorical approach permits the IJ to "look to the inherent nature of the crime[s] as defined by statute and interpreted by the courts and as limited and described by the record of conviction to determine whether the offenses are ones involving moral turpitude." *Kellermann*, 592 F.3d at 704 (internal quotation marks omitted). Because the Plea Agreement did not specify the particular underlying offense that was the object of the alleged conspiracy, the IJ was permitted to look to the indictment, part of the record of conviction, to determine which offense was at issue.

Finally, Yeremin argues that the BIA erred by relying on the Attorney General's recent decision in *Matter of Silva-Trevino*, 24 I. & N. Dec. 687 (A.G. 2008), in determining whether Yeremin's conviction qualified as a crime involving moral turpitude. In *Silva-Trevino*, the Attorney General held that, in determining whether a crime involves moral turpitude, "when the record of conviction fails to show whether the alien was convicted of a crime involving moral turpitude, immigration judges should be permitted to consider evidence beyond that record if doing so is necessary and appropriate." 24 I. & N. Dec. at 699. Permitting examination of extra-record evidence in these circumstances is a departure from the evidentiary limitations created by the categorical and modified-categorical approaches as previously understood. *See, e.g.*, *Jean-Louis v. Attorney Gen.*, 582 F.3d 462, 471–72 (3d Cir. 2009). Yeremin contends that *Silva-Trevino*'s new approach to the moral-turpitude inquiry is an impermissible exercise of authority by the Attorney General, and that the BIA should not have relied on the decision as precedent. *See* Pet. Br. (Case No. 10-4525) at 25–27.

These arguments are not well-taken, because in rendering its decision in Yeremin's case, the BIA did not rely on *Silva-Trevino*'s newly announced framework. The BIA's only reliance on *Silva-Trevino* was to cite the decision following its conclusion that Yeremin's conviction involved moral turpitude because "the inherent nature of the underlying offense clearly involve[d] fraud." C.A.R. at 76 (Nov. 5, 2010

BIA Dec. at 2).  *Silva-Trevino* was cited alongside *Matter of Flores*, a BIA decision which stands for the proposition that even when a statute does not include "the usual phraseology concerning fraud," conviction under the statute may still constitute a crime involving moral turpitude if "fraud is inherent in [the] offense."  17 I. & N. Dec. at 228. Because the BIA did not rely on *Silva-Trevino*'s new framework in this case or examine evidence outside of the record of conviction, Yeremin's arguments that the *Silva-Trevino* decision was ultra vires, that its retroactive application was impermissible, and that the decision does not warrant deference are inapt.  Accordingly, we need not reach Yeremin's arguments relating to *Silva-Trevino* because those arguments are irrelevant to the disposition of his case.

## D.  Denial of Motion to Reconsider

We review the BIA's denial of a motion to reconsider for abuse of discretion. *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007).  "The BIA abuses its discretion when it acts arbitrarily, irrationally, or contrary to law."  *Id.* (citing *Babai v. INS*, 985 F.2d 252, 255 (6th Cir. 1993)).  An abuse of discretion also occurs when the decision is "'made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis such as invidious discrimination.'"  *Id.* at 453 (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)).

A motion to reconsider "shall state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority."  8 C.F.R. § 1003.2(b)(1).  "The purpose of a motion to reconsider is the correction of legal or factual errors that occurred in the BIA's original decision." *Mu Ju Li v. Mukasey*, 515 F.3d 575, 578 (6th Cir. 2008) (citing 8 U.S.C. § 1229a(c)(6)(C); 8 C.F.R. § 1003.2(b)(1)).  "Ultimately, the motion 'is a request to the BIA to reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked.'"  *Sunarto v. Mukasey*, 306 F. App'x 957, 960–61 (6th Cir. 2009) (quoting *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004)).  When a motion to reconsider does not raise any additional legal

arguments that were not already presented to the BIA, the BIA does not abuse its discretion in denying the motion.  *See Sswajje*, 350 F.3d at 533; *see also Mulla v. Holder*, 462 F. App'x 592, 596 (6th Cir. 2012) (affirming the BIA's denial of a motion to reconsider when the motion "raised the identical issues and arguments the BIA previously rejected").

Yeremin's motion to reconsider repeats arguments he made in his appeal from the IJ's decision, specifically arguments relating to the determination that his conviction qualified as a crime involving moral turpitude.  *See* C.A.R. at 51–60 (Mot. to Recon. at 38–47).  The BIA did not abuse its discretion in rejecting these arguments because the BIA had already been presented with and had rejected the same arguments.  *See Sswajje*, 350 F.3d at 533.

Additionally, Yeremin challenged the BIA's reliance on *Silva-Trevino*, arguing that the decision lacks authority as precedent, and that it should not have been applied retroactively to his case.  There was no abuse of discretion in the BIA's rejection of these arguments.  First, the BIA explained that it did not have authority to reconsider the Attorney General's determinations in *Silva-Trevino*.  *See* C.A.R. II at 4 (BIA Denial of Mot. to Recon. at 1).  Pursuant to immigration regulations, the BIA "shall be governed by the provisions and limitations prescribed by applicable law, regulations, and procedures, *and by decisions of the Attorney General*."  8 C.F.R. § 1003.1(d)(1)(i) (emphasis added).  Thus, given that there has not been an enactment of contrary legislation, a promulgation of contrary regulations, or a ruling rejecting *Silva-Trevino* from either this court or the Supreme Court, the BIA was at least permitted—if not required—to allow reliance on *Silva-Trevino*.  *See id.* § 1003.1(g)–(h) (stating that BIA decisions may be modified or overruled by the Attorney General, and that the Attorney General's decisions "shall serve as precedents in all proceedings involving the same issue or issues").  Further, Yeremin's objections to the *Silva-Trevino* decision are misplaced, because there was no material reliance by the BIA on the parts of the Attorney General's decision to which Yeremin objects; Yeremin's arguments regarding *Silva-Trevino* are thus irrelevant to the disposition of his case.  *See supra* Section III.C.

Thus, the BIA did not act arbitrarily, irrationally, or contrary to law in denying Yeremin's motion to reconsider.  *See Alizoti*, 477 F.3d at 451.

## IV.  CONCLUSION

For the foregoing reasons, we **DENY** Yeremin's petitions for review.