RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0255p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JULIO ANASTACIO SUAREZ-DIAZ,

          *Petitioner,*

   *v.*

ERIC H. HOLDER, JR.,

          *Respondent.*

No. 13-3605

Upon Petition for Review of a Decision
from the Board of Immigration Appeals.
No. A024 792 754—No. A024 792 754.

Decided and Filed: April 30, 2014[*]

Before: DAUGHTREY, McKEAGUE, and DONALD, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** George P. Mann, Maris J. Liss, GEORGE P. MANN AND ASSOCIATES, Farmington Hills, Michigan, for Petitioner. Richard Zanfardino, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

---

BERNICE BOUIE DONALD, Circuit Judge. After his sixth request to postpone the removal proceedings against him was denied, Julio Anastacio Suarez-Diaz appealed the Immigration Judge ("IJ")'s order of removal to the Board of Immigration Appeals ("BIA"). He

---

[*] This decision was originally issued as an "unpublished decision" filed on April 30, 2014. The court has now designated the opinion as one recommended for full-text publication.

1

now petitions for judicial review of the BIA's subsequent dismissal of that appeal. For the reasons that follow, we DENY the petition.

## I.

### BACKGROUND

Suarez-Diaz is a native and citizen of Cuba. In 1980, he was paroled into the United States under section 212(d)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5).[1] In 1984, Suarez-Diaz was convicted of robbery, unlawful possession of a weapon, and receiving stolen property in New Jersey state court and received a combined sentence of ten years. Citing the convictions and his lack of an immigrant visa or other valid entry document, the Government initiated removal proceedings against Suarez-Diaz by serving him with a Notice to Appear in April of 2009.

On June 16, 2009, Suarez-Diaz appeared pro se before the Immigration Court in Detroit, Michigan. After being advised of the charges against him, he was granted a continuance to secure legal representation. On September 8, 2009, Suarez-Diaz returned to Immigration Court and, through counsel, conceded his removability on each of the grounds charged in the Notice to Appear. He then requested a second continuance, to apply for deferral of removal and to seek separate relief under the Cuban Adjustment Act. He advised the court that he would have the application to defer his removal prepared within sixty days. The IJ, Robert Newberry, granted Suarez-Diaz's request and continued the removal proceedings against him until November 15, 2010. He advised Suarez-Diaz, however, that failure to file his application within sixty days "w[ould] be deemed an abandonment."

Suarez-Diaz failed to file an application to defer his removal within the sixty days. In October of 2010, however, he filed a motion to continue the removal proceedings scheduled for November 15, citing "a conflict in [his] counsel's schedule." IJ Newberry denied the motion, noting that the removal proceedings already had been delayed for over a year.

---

[1]Although the IJ's removal order lists the INA section under which Suarez-Diaz was paroled into the United States as 212(b)(5), the Notice to Appear by which the Government initiated removal proceedings against Suarez-Diaz correctly lists the relevant section as 212(d)(5). INA section 212(b) has only three numbered subsections and does not have a subsection 5. *See* 8 U.S.C. § 1182(b).

On November 1, 2010, Suarez-Diaz finally filed an application to defer his removal, relying on the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), Apr. 18, 1988, 108 Stat. 382, 1265 U.N.T.S. 85. He also filed a second motion to continue the November 15 removal proceedings, alleging that he had filed an application to change his citizenship status under the Cuban Adjustment Act that selfsame day and contending that the removal proceedings should be postponed "in the interests of judicial efficiency."[2]   Although the Government did not oppose the second motion to continue, IJ Newberry denied it two days later, noting in his order that Suarez-Diaz had not withdrawn his application for CAT relief.

Accordingly, on November 15, 2010, removal proceedings against Suarez-Diaz resumed as scheduled. IJ Newberry began by restating that he had denied Suarez-Diaz's second motion to continue because Suarez-Diaz's application for CAT relief remained pending. He then asked whether Suarez-Diaz wished to withdraw the application, to which Suarez-Diaz's counsel responded, "Yes, Your Honor." IJ Newberry also asked whether Suarez-Diaz's application to change his citizenship status under the Cuban Adjustment Act remained pending. Suarez-Diaz's counsel answered affirmatively and explained that he had filed the application late due to a mistaken belief that the court, rather than the United States Citizenship and Immigration Services ("CIS"), had jurisdiction over it.[3]

In light of counsel's representation that Suarez-Diaz wished to withdraw his CAT application, IJ Newberry asked whether the Government had any opposition to continuing the removal proceedings against Suarez-Diaz during the pendency of his Cuban Adjustment Act application. The Government responded that it would consent to a third continuance as long as the withdrawal of Suarez-Diaz's CAT application foreclosed future requests for CAT relief. (A.R. 131-32 ("As long as he understands its [sic] knowing and voluntary and its [sic] forever gone, then I don't have a problem with [a continuance], Your Honor.").) Through an interpreter, IJ Newberry then placed Suarez-Diaz under oath and explained the following:

---

[2]The application form, however, is dated November 6, 2009.

[3]*See supra* note 2 and accompanying text.

Now, today, was the day that we had set to decide whether or not you could prove that it's more likely than not you would be tortured if you went back to Cuba today. Now, your lawyer has indicated that you would like to withdraw forever this [CAT] application for a deferral of removal so that you can attempt to get your green card through the CIS and the Cuban Adjustment. Do you understand?

Suarez-Diaz responded, "Yes. Yes." IJ Newberry also asked Suarez-Diaz, "Is that what you want to do?" Suarez-Diaz again replied, "Yes."

IJ Newberry next explained that there was no guarantee that Suarez-Diaz would obtain a green card under the Cuban Adjustment Act and admonished that, should his application fail, "the [c]ourt would be obligated to order that [he] be deported because there would be nothing else [he] could apply for before the [c]ourt." When asked whether he understood this possibility, Suarez-Diaz again replied, "Yes." IJ Newberry further explained that, although Suarez-Diaz's lawyer could advise him, "whether to withdraw th[e] [CAT] application or not" was Suarez-Diaz's decision. Suarez-Diaz responded, "In this case, here. Yes." The following exchange then ensued:

| | |
|---|---|
| IJ NEWBERRY: | So now you need to understand what you're doing and I have to be confident that your decision is a voluntary decision. |
| SUAREZ-DIAZ: | Yes. |
| IJ NEWBERRY: | So do you have any questions, sir? |
| SUAREZ-DIAZ: | Nothing now. |
| IJ NEWBERRY: | All right. Have you had enough time to talk to [your lawyer] about this? |
| SUAREZ-DIAZ: | Yes. |
| IJ NEWBERRY: | And do you want to withdraw this deferral of removal application and go ahead and see if you can get your green card through the CIS? |
| SUAREZ-DIAZ: | Uh-huh. |
| IJ NEWBERRY: | Is that yes? |

SUAREZ-DIAZ:       Yes.

IJ NEWBERRY:       Okay.  Now, [your lawyer] is not forcing you to do something you do not want to do, is he?

SUAREZ-DIAZ:       No.

IJ NEWBERRY:       So this is your voluntary decision?

SUAREZ-DIAZ:       Yes.

IJ NEWBERRY:       Okay.

. . . .

IJ NEWBERRY:       Here's what I'm going to do, sir, is I'm going to after today's hearing have my clerk send [your lawyer] a hearing notice.  It will be for what we call a master calendar and it will be scheduled probably sometime in late June to early August . . . .  The important thing is make sure that you appear at the next hearing because if you are not here you can be deported for your failure to be here . . . .  Do you have any questions, sir?

SUAREZ-DIAZ:       No, that's fine.

IJ NEWBERRY:       [Counsel], anything else?

SUAREZ-DIAZ'S
COUNSEL:           That will be fine. I'm all set, Your Honor.  Thank you.

On March 18, 2011, CIS denied Suarez-Diaz's Cuban Adjustment Act application. Suarez-Diaz appealed the denial the following month.

## THE INSTANT PROCEEDINGS

On August 2, 2011, removal proceedings against Suarez-Diaz resumed before IJ Newberry.  Through counsel, Suarez-Diaz requested a fourth continuance to allow his appeal from the denial of his Cuban Adjustment Act application to be adjudicated.  The Government

opposed the request, noting that the appeal was collateral to the removal proceedings and contending that it did not present a good cause for delay. Suarez-Diaz's counsel responded that the appeal should not take longer than six months but admitted that he "may have [erred] in advising [Suarez-Diaz] to give up his right for filing, withdrawing or encouraging [Suarez-Diaz] to withdraw his [CAT application]." After allowing counsel to reserve Suarez-Diaz's right to appeal, IJ Newberry denied the request for a continuance and ordered that Suarez-Diaz be deported to Cuba on the basis of the charges in the Government's Notice to Appear. His removal order noted that, on November 15, 2010, "[Suarez-Diaz] withdrew with prejudice this [CAT] application in exchange for a continuance until August 2 of 2011."

Suarez-Diaz subsequently appealed the removal order to the BIA, contending that IJ Newberry had coerced him into withdrawing his CAT application in exchange for a continuance while his Cuban Adjustment Act application remained pending and thereby had violated his right to due process. His brief also included a "motion" for the BIA to either comply with the Paperwork Reduction Act ("PRA"), 44 U.S.C. § 3501, *et seq.*, or explain why the act did not apply to it. Suarez-Diaz alleged neither that the BIA had failed to comply with the act nor that any such failure had injured him, but he contended that due process required the BIA's compliance with it.

Over the objection of one of its panel members, who dissented without a separate opinion, the BIA concluded that the withdrawal of Suarez-Diaz's CAT application "was knowing and voluntary" and dismissed his appeal. The order of dismissal did not address Suarez-Diaz's "motion" that the BIA comply with the PRA. This petition for judicial review timely followed.

## II.

As of May 11, 2005, judicial review of final orders of removal is governed by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302. Under this act, the court generally may review such an order only to the extent that a petitioner "has exhausted all administrative remedies available to [him] as of right." 8 U.S.C. § 1252(d)(1). Additionally, the scope of our review is limited to "the administrative record on which the order of removal is based," and the standard by which we conduct it is as follows: "administrative findings of fact are conclusive

unless any reasonable adjudicator would be compelled to conclude to the contrary." § 1252(b)(4).

When the BIA affirms an IJ's decision without issuing its own opinion, we review the IJ's decision directly as the final administrative order. *Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005). Where, as here, however, "the BIA reviews the immigration judge's decision and issues a separate opinion . . . we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). In such cases, we still review the IJ's reasoning to the extent that the BIA adopted it. *Id.* And despite the substantial deference that we pay to administrative findings of fact, we review questions of law de novo. *Id.*

Finally, we review an IJ's denial of a motion for continuance for abuse of discretion. *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007). "An abuse of discretion occurs if the denial . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Id.* (citation and internal quotation marks omitted). An IJ "may grant a motion for continuance for good cause shown," 8 C.F.R. § 1003.29, and the BIA encourages the favorable exercise of the IJ's discretion "when a prima facie approvable visa petition and adjustment application have been submitted in the course of an ongoing removal hearing," *In re Hashmi*, 24 I. & N. Dec. 785, 790 (BIA 2009). The BIA has admonished, however, that IJs are not required "to grant a continuance in every case where there is a pending visa petition." *Id.* Further, the BIA expressly has stated that "[i]t is *not* good cause to request a continuance to await the results of a collateral event, such as the filing of a motion to reopen visa petition proceedings, which may or may not result in an outcome favorable to the respondent at some uncertain, indefinite date in the future." *Ilic-Lee*, 507 F.3d at 1047 (referencing the parties' joint appendix on appeal).

**III.**

Suarez-Diaz's petition raised three issues for our consideration, reserving the right to raise others after examining the administrative record. He claimed that (1) IJ Newberry coerced him into giving up CAT relief in exchange for a continuance of the removal proceedings against him, thereby compromising his right to due process; (2) IJ Newberry abused his discretion in "refusing to permit [Suarez-Diaz] to go forward on his [CAT] claims"; and (3) the BIA erred in

finding that IJ Newberry's rulings were supported by substantial evidence. In his brief, however, Suarez-Diaz whittles these issues down to one—that the BIA erred in dismissing his appeal in light of IJ Newberry's supposed coercion—and adds another: that the BIA erred in failing to address his "motion" to comply with the PRA. Suarez-Diaz presented both issues to the BIA in his direct appeal, and both issues, therefore, properly are before us now. *See* 8 U.S.C. § 1252(d)(1). We address each one in turn, attending to the nuances of the first as reflected in the three separate allegations of which it is comprised.

## DUE PROCESS

In its 2010 decision in *Debek v. Holder*, this court left "for another day the question whether an alien's due process rights are violated when he agrees in a removal proceeding to concede some type of relief." 380 F. App'x 492, 497. That day is today. Whether removal proceedings reflect a denial of due process is a question of law that we review de novo. *Ndrecaj v. Mukasey*, 522 F.3d 667, 673 (6th Cir. 2008) (quoting *Vasha v. Gonzales*, 410 F.3d 863, 872-73 (6th Cir. 2005)). To establish such a denial, a petitioner must demonstrate that there was a defect in the removal proceedings as a result of which he was prejudiced. *Id.* We hold that Suarez-Diaz fails to make the required showing here.

In *Debek*, the denial of the continuance sought by the petitioner was not based on his agreement to withdraw a request for other relief—there, an asylum petition. *Id.* at 497-98. Instead, "the BIA focused on the likelihood that Debek could succeed on the merits of a newly-filed asylum petition and . . . concluded he could not." *Id.* at 498. This court determined, therefore, that the petitioner's agreement to withdraw his asylum application did not affect the outcome of his case and, consequently, that he was not prejudiced by it. *Id.*

Here, by contrast, IJ Newberry expressly denied Suarez-Diaz's November 1, 2010 motion to continue because Suarez-Diaz's CAT application remained pending. He expressly confirmed the reason for the denial in the colloquy with Suarez-Diaz's counsel at the November 15, 2010 removal proceedings. Indeed, even in questioning Suarez-Diaz directly, IJ Newberry connected the granting of a continuance with the withdrawal of Suarez-Diaz's CAT application: "[Y]our lawyer has indicated that you would like to withdraw forever this [CAT] application for a deferral of removal so that you can attempt to get your green card through the CIS and the Cuban

Adjustment. Do you understand?" And in his order of removal, IJ Newberry observed that "[Suarez-Diaz] withdrew with prejudice this [CAT] application in exchange for a continuance until August 2 of 2011."**[4]**

And yet, on the facts of this case, we cannot say that the IJ's conduct amounted to a denial of due process. Due process requires a "full and fair hearing" of an alien's claims before an IJ, *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009); this, the record suggests, Suarez-Diaz would have received had he not *chosen*, both through counsel and in his own voice, to withdraw his CAT application. Indeed, IJ Newberry made plain to Suarez-Diaz that November 15, 2010, "was the day that [they] had set to decide whether or not [Suarez-Diaz] could prove that it's more likely than not [he] would be tortured if [he] went back to Cuba." He also cautioned Suarez-Diaz that "whether to withdraw th[e] [CAT] application or not" was his decision and not his lawyer's. Further, IJ Newberry alerted Suarez-Diaz that he might be unsuccessful in pursuing a change of citizenship status under the Cuban Adjustment Act and that, if so, after having withdrawn his CAT application, "the [c]ourt would be obligated to order that [he] be deported because there would be nothing else [he] could apply for before the [c]ourt." Still, Suarez-Diaz withdrew the application.

What Suarez-Diaz contends were "clearly coercive" exchanges could not have been so on a record where his *counsel* confessed, in open court, that he "may have [erred] in advising [Suarez-Diaz] to" withdraw his CAT application, and the IJ engaged in extended discussion not only with counsel but also directly with Suarez-Diaz, through an interpreter, to ensure that his choice was knowing and voluntary. Also working against the notion "that IJ Newberry acted ultra vires," (Pet. Br. at 20), is the fact that the *Government*, and not the IJ, requested that the withdrawal of Suarez-Diaz's CAT application be with prejudice as a condition of consenting to the continuance. (*See* A.R. 132 ("As long as he understands its [sic] knowing and voluntary and its [sic] forever gone, then I don't have a problem with [a continuance], Your Honor.").) We

---

**[4]**We also note, with a gimlet eye, the sobering assemblage of similar exchanges attributed to IJ Newberry in such cases as *Debek, Mece v. Gonzales*, 415 F.3d 562 (6th Cir. 2005), and *Vucaj v. Gonzales*, 150 F. App'x 444 (6th Cir. 2005). (*See* Pet. Br. at 14-17; Reply Br. at 12.) We therefore reaffirm that the prescribed inquiry for determining whether a continuance is warranted in a given case—whether "good cause [has been] shown," 8 C.F.R. § 1003.29—is the only one in which an IJ should engage. That inquiry does not contemplate a vulnerable, displaced, and often ill-equipped alien's willingness to relinquish a potentially meritorious request for relief as "good cause."

therefore cannot say that the BIA erred in concluding that the withdrawal of Suarez-Diaz's CAT application "was knowing and voluntary" or in dismissing Suarez-Diaz's appeal.

But even assuming *arguendo* that IJ Newberry's conduct establishes a defect in the removal proceedings, Suarez-Diaz cannot demonstrate any resulting prejudice. *See Ndrecaj*, 522 F.3d at 673 (quoting *Vasha*, 410 F.3d at 872-73). By November 15, 2010, when Suarez-Diaz withdrew his CAT application, more than a year had passed since he had advised IJ Newberry, on September 8, 2009, that he would submit the application within sixty days or risk its being deemed abandoned. Instead, Suarez-Diaz did not file the application until November 1, 2010—a mere two weeks before the resumption of removal proceedings against him. Suarez-Diaz's Cuban Adjustment Act application also was late, and the record discloses nothing that would have prevented earlier filing and, perhaps, adjudication, save his own counsel's mistake.

More to the point, however, Suarez-Diaz could not have suffered any prejudice on November 15, 2010, because nothing prevented him from arguing the merits of his CAT application *that day*. The record reflects that IJ Newberry was prepared to adjudicate the application and that Suarez-Diaz had had over a year to prepare its presentation. No reasonable adjudicator could conclude otherwise. *See* 8 U.S.C. § 1252(d)(4).

We therefore hold that although an alien's right to due process *may* be violated when he agrees in a removal proceeding to concede some type of relief, such an agreement does not per se amount to a denial of due process. We find no due process violation on the facts of this case.

## ABUSE OF DISCRETION

Even in the absence of a due process violation, it is possible that IJ Newberry abused his discretion in denying Suarez-Diaz a continuance. *See Ilic-Lee*, 507 F.3d at 1047. The record reflects three such denials: (1) in response to Suarez-Diaz's motion to continue of October 2010; (2) in response to the motion to continue of November 1, 2010; and (3) in response to Suarez-Diaz's oral request of August 2, 2011, for a continuance pending his appeal of CIS's denial of his Cuban Adjustment Act application. Not one of them, however, "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis

such as invidious discrimination." *Ilic-Lee*, 507 F.3d at 1047.  Consequently, we find no abuse of discretion here.

IJ Newberry denied the motion of October 2010 expressly because removal proceedings against Suarez-Diaz had been pending for over a year.  This determination was rational and consistent with the "broad discretion in conducting [removal proceedings]" that IJs retain.  *Lin*, 565 F.3d at 980.  The denial of the second motion holds more promise for Suarez-Diaz, however, as that motion explained that Suarez-Diaz had filed his Cuban Adjustment Act application and requested, for the first time, that the removal proceedings against him be postponed on that basis.

As explained above, the BIA encourages the favorable exercise of discretion when such an application is "prima facie approvable." *In re Hashmi*, 24 I. & N. Dec. at 790.  But IJs are not required "to grant a continuance in every case where there is a pending visa petition." *Id.*  And it is not an abuse of discretion to deny a second motion to continue when it is filed one month after the first, in a matter that has been docketed for over a year.  Additionally, although the record does not disclose any investigation on the part of IJ Newberry into the merits of Suarez-Diaz's Cuban Adjustment Act application,[5] *see In re Hashmi*, 24 I. & N. Dec. at 790, it does reflect the application's ultimate fate: rejection by CIS, (A.R. 150).  Accordingly, the denial of Suarez-Diaz's November 1, 2010 motion to continue does not constitute an abuse of discretion.

Finally, IJ Newberry's denial of Suarez-Diaz's oral motion to continue of August 2, 2011, is wholly unhelpful to this petition for judicial review.  It bears noting that, at that point, Suarez-Diaz had requested five continuances—on June 16, 2009; September 8, 2009; October 2010; November 1, 2010; November 15, 2010—and had been granted three.  On August 2, when he made his sixth request, Suarez-Diaz's Cuban Adjustment Act application had been rejected by CIS, and he sought a continuance pending its appeal.  These circumstances fall squarely within the embrace of the BIA's direction that "[i]t is *not* good cause to request a continuance to await the results of a collateral event, such as the filing of a motion to reopen via petition proceedings, which may or may not result in an outcome favorable to the respondent at some uncertain,

---

[5]In IJ Newberry's removal order, however, he noted that Suarez-Diaz's appeal of his Cuban Adjustment Act application's ultimate rejection by CIS was based on only one part of a "several reason-denial." (A.R. 114.) "[T]he application was actually denied on two or three other bases and those were not addressed in the appeal[.]" (A.R. 114.)

indefinite date in the future." *Ilic-Lee*, 507 F.3d at 1047. The Government employed similar reasoning in opposing the request, noting that Suarez-Diaz's appeal of the CIS rejection was collateral to the removal proceedings and contending that the appeal did not present a good cause for delay. Additionally, Suarez-Diaz's counsel acknowledged that resolution of the appeal could take six months or more. IJ Newberry's decision to deny the request of August 2, therefore, was not an abuse of discretion. *See Ilic-Lee*, 507 F.3d at 1047.

PAPERWORK REDUCTION ACT

Suarez-Diaz's second claim merits little attention. He demands that the BIA either comply with the PRA or "provide a rationale for its failure to do so" and charges as error the BIA's failure to address the PRA "motion" in his brief on direct appeal. He also relies on precedent from this court and one of our sister circuits for the proposition that the BIA must consider each and every claim that a petitioner raises. (Pet. Br. at 21 (citing, *inter alia*, *Tan v. U.S. Attorney Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006); *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003)).) But neither in his appeal to the BIA nor in his briefing before this court has Suarez-Diaz specifically alleged that the BIA has failed to comply with the PRA or that any such failure has injured him. Nor does Suarez-Diaz articulate a basis for his claimed entitlement to a "rationale" in the event of any noncompliance.

Suarez-Diaz is correct that it is incumbent upon the BIA to "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Scorteanu*, 339 F.3d at 412. But we have explained before that, like arguments that are not specifically raised on appeal, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) (citation and internal quotation marks omitted). More recently, in specifically addressing a claim under the PRA, we stated the following:

> We appreciate the goal of reducing the paperwork generated by our legal system, and we will do our part here by dispatching this argument quickly—and just once. Because [the petitioner] raises this [PRA] argument in a perfunctory manner and makes no effort at developed argumentation—she does not identify which

provision of the Act the B[IA] supposedly violated, nor does she explain why a paper-generating remand is a useful remedy—we deem the argument forfeited.

*Johns v. Holder*, 678 F.3d 404, 408-09 (6th Cir. 2012) (citation and internal quotation marks omitted).  So it is here.

## IV.

Suarez-Diaz cannot establish a denial of due process or an abuse of discretion.  He also does not raise a cognizable claim under the PRA, having alleged neither that the BIA failed to comply with the act nor that any such failure has injured him.  For these reasons, we DENY Suarez-Diaz's petition for judicial review.