NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0240n.06

Case No. 25-3755

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ALICIA HERNANDEZ-MENDEZ, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| TODD BLANCHE, Acting U.S. Attorney | ) | BOARD OF IMMIGRATION |
| General, | ) | APPEALS |
| Respondent. | ) | |
| | ) | OPINION |

FILED
May 28, 2026
KELLY L. STEPHENS, Clerk

Before: SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

SUTTON, Chief Judge. Alicia Hernandez-Mendez, a citizen of Mexico who illegally entered the United States, sought cancellation of removal from this country. The Board of Immigration Appeals denied the request because she committed identity fraud, a conviction that it determined made her ineligible for cancellation of removal. We agree and deny her petition for review.

I.

Born in Mexico, Hernandez-Mendez illegally entered the United States as an adult in March 2001. She has lived in Ohio ever since. In November 2012, Hernandez-Mendez pleaded guilty to felony identity fraud under Ohio law after she presented someone else's identification as her own. *See* Ohio Rev. Code § 2913.49(B). An Ohio court sentenced her to two years' probation.

In December 2012, the United States charged Hernandez-Mendez with removability for entering the country without inspection. She conceded that the government had the right to return her to Mexico but sought cancellation of removal in view of her many years in the country. Seven years elapsed before an immigration judge heard her request in November 2020. At the outset of the hearing, Hernandez-Mendez sought a continuance so that she could challenge the validity of her identity fraud conviction. The immigration judge denied the request because Hernandez-Mendez failed to show good cause for the delay. The immigration judge proceeded to deny her application for cancellation of removal because her conviction for identity fraud made her ineligible. *See* 8 U.S.C. § 1229b(b)(1)(C). The Board of Immigration Appeals affirmed both decisions.

II.

Because the Board issued a reasoned opinion, we review its work. *Castillo v. Bondi*, 140 F.4th 777, 779 (6th Cir. 2025). We accept the Board's factual findings as long as substantial evidence supports them, and we size up its legal conclusions with fresh eyes. *Seldon v. Garland*, 120 F.4th 527, 531 (6th Cir. 2024). Hernandez-Mendez disagrees with two aspects of the Board's decision: (1) that her identity fraud conviction made her ineligible for cancellation of removal and (2) that she failed to show good cause for a continuance.

*Cancellation of removal*. To qualify for cancellation of removal, Hernandez-Mendez must show, among other requirements, that she has not been convicted while in this country of a "crime involving moral turpitude" that could lead to one year in prison or more. 8 U.S.C. §§ 1227(a)(2)(A)(i), 1229a(c)(4)(A), 1229b(b)(1)(C); *see Pereida v. Wilkinson*, 592 U.S. 224, 231–32 (2021). An offense involves "moral turpitude" if it proscribes conduct "that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between

persons or to society in general." *Yeremin v. Holder*, 738 F.3d 708, 714 (6th Cir. 2013) (quotation omitted). "Crimes that involve deception or fraud," we have consistently held, "qualify as crimes involving moral turpitude." *Id.* A criminal conviction qualifies as long as "fraud or deception is inherent in the nature of the offense," even if the statute does not "explicitly require an intent to defraud or use the language of fraud." *Id.* That includes offenses involving the "knowing possession of unlawfully possessed or false identification documents, combined with a corrupt intent to use or transfer the documents unlawfully." *Id.* at 717.

In 2012, Hernandez-Mendez pleaded guilty to "[i]dentity fraud" in an Ohio court, a fifth-degree felony punishable by up to 12 months in prison. *See* Ohio Rev. Code §§ 2913.49(B)(2), 2929.14(A)(5). The conviction involved (1) "us[ing], obtain[ing], or possess[ing] any personal identifying information of another person," (2) "without the express or implied consent of the other person," and (3) "with intent to . . . [r]epresent the other person's personal identifying information as the person's own personal identifying information." *Id.* § 2913.49(B).

This conviction, regrettably for Hernandez-Mendez, counts as a crime of moral turpitude punishable by one year or more of prison. Hernandez-Mendez committed the crime by intentionally using someone else's identification as her own. "Represent[ing] [an]other person's personal identifying information as [her] own" entailed deception. *Id.* And a crime of "deception" qualifies as moral turpitude. *Yeremin*, 738 F.3d at 714

In *Yeremin*, we considered whether a conviction for trafficking in fraudulent identification documents counted as a crime of moral turpitude. *See id.* at 712. The conviction required proof that the immigrant "knowingly possess[ed] with intent to use unlawfully" five or more "identification documents" belonging to another person. *Id.* at 711–12 (quoting 18 U.S.C.

§ 1028(a)(3)).    We explained that the offense inherently involved deception and "therefore . . . constituted a crime [of] moral turpitude." *Id.* at 716–17.

Ohio identity fraud likewise requires proof that Hernandez-Mendez used someone else's identification without their permission and intentionally presented it as her own. Ohio Rev. Code § 2913.49(B).   As in *Yeremin*, the Ohio offense requires "knowing possession of unlawfully possessed" identification and the "corrupt intent to use . . . the documents" in violation of the law. 738 F.3d at 717.   There is no getting around it:  This identity fraud offense qualifies as a crime of moral turpitude.

We appreciate that "moral turpitude" is a dated phrase that does not by itself clarify every covered criminal law.  But the two words do not stand alone.  Only a crime that a State or the National Government criminalizes and makes punishable by at least a year in prison qualifies. 8 U.S.C. § 1227(a)(2)(A).  Case law clarifies that the statute extends to crimes of deception.  Our court and other courts have applied the phrase to many crimes similar to this one. *See, e.g.*, *Zaitona v. INS*, 9 F.3d 432, 438 (6th Cir. 1993) ("knowingly mak[ing] a false statement or knowingly conceal[ing] a material fact" in a driver's license application) (quotation omitted); *Serrato-Soto v. Holder*, 570 F.3d 686, 690–91 (6th Cir. 2009) ("willfully" or "knowingly" using personal information or identification with intent "to hide a person's true identity"); *Walker v. U.S. Att'y Gen.*, 783 F.3d 1226, 1229 (11th Cir. 2015) ("uttering a forged instrument"); *De Martinez v. Holder*, 770 F.3d 823, 825 (9th Cir. 2014) (per curiam) ("us[ing] a false Social Security number . . . to obtain employment"); *Tall v. Mukasey*, 517 F.3d 1115, 1119 (9th Cir. 2008) ("knowingly possess[ing] for sale any counterfeit" trademark) (quotation omitted); *Rodriguez v. Gonzales*, 451 F.3d 60, 63–64 (2d Cir. 2006) (per curiam) ("willfully and knowingly ma[king] any false statement in an application for passport with intent to induce or secure the issuance of a passport") (quotation

omitted); *Montero-Ubri v. INS*, 229 F.3d 319, 320–21 (1st Cir. 2000) ("us[ing]" "a fraudulent driver's license").

Hernandez-Mendez resists the conclusion that this conviction involved deception. But deception lies at the heart of identity fraud. The statute bans intentionally trying to pass off someone else's identification as one's own. That requires deceit.

Hernandez-Mendez points out that the Ohio identity fraud statute does not mention fraudulent or deceptive intent. But the moral turpitude statute does not have a magic words requirement. Regardless of whether the Ohio law "explicitly require[s] an intent to defraud or use[s] the language of fraud," statutes in which "fraud or deception is inherent" qualify as crimes of moral turpitude. *Yeremin*, 738 F.3d at 714. The Ohio statute clears that bar. The State convicted her under an "[i]dentity fraud" statute. Ohio Rev. Code § 2913.49. And the conviction required the specific "intent" to misrepresent someone else's identification, not a passing mistake or mere negligence. *Id.* § 2913.49(B). The Board correctly denied Hernandez-Mendez's application for cancellation of removal.

*Continuance*. Hernandez-Mendez separately challenges the immigration judge's denial of her request for a continuance. Immigration judges "may" grant a continuance if the immigrant demonstrates "good cause" for it. 8 C.F.R. § 1003.29. We review the decision for abuse of discretion. *Suarez-Diaz v. Holder*, 771 F.3d 935, 941 (6th Cir. 2014).

No abuse of discretion occurred. Hernandez-Mendez failed to show good cause for a continuance. While she claimed she needed time to challenge her 2012 identity fraud conviction, eight years by then had elapsed between her guilty plea and her immigration hearing. She provided no explanation then, and has no good explanation now, for why she did not challenge the conviction during those eight years. Cementing that conclusion is the reality that the immigration

5

judge reminded Hernandez-Mendez and her attorney in 2013 about the conviction and indicated that it might render her ineligible for immigration relief.

Hernandez-Mendez's other reasons for seeking a continuance also do not carry the day. She claims that a 42-day delay would have promoted administrative efficiency by allowing the immigration court to consolidate her case with her husband's, that this was her first request for a continuance, and that the immigration court unexpectedly moved up her hearing date. None of these explanations shows that the Board abused its discretion. The Board had ample reason for agreeing that the immigration judge should not have to wait any longer to hold her hearing given the eight years that had already passed. And in view of the time that had passed, that conclusion was sound no matter whether this was Hernandez-Mendez's first or fifth request for a continuance. Nor does she show why or how the failure to reschedule her hearing harmed her case.

Hernandez-Mendez argues that the immigration judge and the Board erred by not fully engaging with these secondary points in rejecting her argument for a continuance. But each of them explained why the primary basis for her request—more time to challenge her identity fraud conviction—did not constitute good cause. And as the immigration judge explained, she never sought to consolidate her case with her husband's over the many years before the hearing. Plus, we do not require the Board to "write an exegesis on every contention." *Herrera v. Bondi*, 162 F.4th 617, 624 (6th Cir. 2025) (quotation omitted). All in all, the Board fulfilled its duty to "consider the issues" that Hernandez-Mendez "raised" and to "announce its decision in terms sufficient to enable us to perceive that it has heard and thought and not merely reacted." *Id.* at 624–25 (quotation omitted).

We deny the petition for review.