**NOT RECOMMENDED FOR PUBLICATION**
File Name: 15a0564n.06

No. 14-4292

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 10, 2015
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| NDUBISI GRANT IGWE, | ) |
| | ) |
| **Petitioner,** | ) ON PETITION FOR REVIEW |
| | ) OF A FINAL ORDER OF THE |
| v. | ) UNITED STATES BOARD OF |
| | ) IMMIGRATION APPEALS |
| LORETTA LYNCH, Attorney General, | ) |
| | ) **OPINION** |
| **Respondent.** | ) |
| | ) |

BEFORE: SILER, COOK, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Ndubisi Grant Igwe (Igwe), a native and citizen of Nigeria, seeks judicial review of the Board of Immigration Appeals's (BIA) affirmance of the Immigration Judge's (IJ) denial of his request for relief from removal pursuant to the Immigration and Nationality Act (INA) § 212(c), 8 U.S.C. § 1182(c).[1] We **DISMISS** the petition in part for lack of jurisdiction and **DENY** the remainder of the petition.

## I. BACKGROUND

### A. Removal Proceedings and Criminal Convictions

Igwe lawfully entered the United States as a student in 1976 and completed his undergraduate studies at Clarion State College in Clarion, Pennsylvania, in 1980. Igwe then

---

[1] Former INA § 212(c) provides that "aliens lawfully admitted for permanent residence, who temporarily proceed abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to certain specified grounds for exclusion enumerated in section 212(a) of the Act." *Matter of Silva*, 16 I. & N. Dec. 26 (BIA 1976).

studied medicine at Universidad Cantro de Investigacion University (CIFAS), in the Dominican Republic. Upon concluding the classroom-instruction portion of his studies in the Dominican Republic, Igwe returned to the United States on an F-1 student visa to complete the clinical portion. However, CIFAS closed in 1984,[2] three years before Igwe completed medical school. He testified that CIFAS had both English and Spanish sections, and only the English section closed. After the English section closed, he stayed in contact with CIFAS and continued paying tuition to remain enrolled in the Spanish section. In 1990, Igwe opened his own practice, the Preferred Family Clinic, in Detroit, Michigan, and some months later, in February 1991, he adjusted to lawful-permanent-resident status. In July 1991,[3] Igwe married his wife, Esther Igwe, whom he met in Nigeria. Mrs. Igwe has since become a U.S. citizen. Together they have two adult sons and one minor son, and Igwe has an older son from a previous relationship. All of the children are United States citizens.

In the early or mid-1990s, Igwe learned that he may not have graduated from medical school, but he continued to practice in his Detroit clinic. He has never provided proof that his

---

[2] In 1984, two medical schools in the Dominican Republic, CIFAS and Universidad Centro de Estudios Tecnologicos (Universidad CETEC), were ordered closed after investigators found evidence of "widespread trafficking in bogus medical degrees." An investigatory panel in the Dominican Republic disclosed that in the past, "several thousand medical degrees had been illegally concocted and sold by rings of people operating inside Dominican universities." The closures made it difficult to determine which affected students had participated in legitimate courses of study and thus deserved to have their credits transferred to other schools. Richard D. Lyons, *2 Medical Schools Closed in Scandal*, N.Y. TIMES, May 16, 1984, http://www.nytimes.com/1984/05/16/us/2-medical-schools-closed-in-scandal.html.

[3] There are some discrepancies in the record regarding the marriage date. The IJ's decision from September 22, 2010 states that Igwe and his wife were married in 1990; however, Mrs. Igwe's letter to the IJ states that in 2013, she and Igwe had been married for 22 years, dating their marriage to 1991. Igwe also testified in September 2009 that they got married on July 24, 1991.

medical degree is valid, and has conceded that he is not licensed to practice medicine in the United States.

In 1994, Igwe pleaded guilty to four Michigan offenses related to practicing medicine without a license: (1) Conspiracy to Defraud Blue Cross/Blue Shield, in violation of Mich. Comp. Law § 752.1005; (2) Health Care False Claims, in violation of Mich. Comp. Law § 752.1003(1); (3) Unlawful Delivery of a Schedule III Controlled Substance, in violation of Mich. Comp. Law § 333.7401(2)(b); and (4) Practicing Medicine Without a License, in violation of Mich. Comp. Law § 333.16294. He was sentenced to five years of probation and ordered to pay $72,933 in restitution.[4] Further, in 1995, while on probation for the 1994 convictions, Igwe was convicted of domestic violence, for which he completed court-ordered anger-management classes. Additionally, sometime prior to 1993, Igwe was arrested for failing to return a rental car.

On or about January 4, 1999, Igwe was returning to the United States from vacation in Nigeria when Immigration and Nationalization Services (INS) officials detained him. INS claimed Igwe was inadmissible due to his 1994 convictions. On February 1, 1999, the Government commenced removal proceedings against Igwe by filing a Notice to Appear alleging his removability under INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I) (crime involving moral turpitude). Igwe admitted the factual allegations and conceded removability, but requested the IJ find him eligible for relief under INA § 212(h), though he later conceded his ineligibility for that waiver. In November 1999, the Government filed a Form I-261, Additional Charges of Inadmissibility/Deportability, alleging two additional removability charges. In March 2000,

---

[4] Both Igwe's brief to this court and the IJ's decision of November 25, 2013 state that Igwe was ordered to pay $72,933 in restitution. However, the Government's brief states that Igwe was ordered to pay $71,133 in restitution.

Igwe conceded removability under INA § 212(a)(2)(A)(i)(II) (violation of controlled substance law), but claimed eligibility for an INA § 212(c) waiver. The Government withdrew the remaining charge: that Igwe did not have valid entry documents or travel documents pursuant to INA § 212(a)(7)(A)(i)(I).

On June 2, 2000, the IJ denied Igwe's § 212(c) removability waiver request, holding that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), barred this relief, and ordered him removed to Nigeria. While Igwe's appeal to the BIA was pending, the Supreme Court held in *INS v. St. Cyr*, 533 U.S. 289, 326 (2001) that INA § 212(c) relief restrictions did not apply retroactively to resident aliens who pleaded guilty to offenses with immigration consequences prior to April 24, 1996, the date of AEDPA's enactment. Thus, pursuant to *INS v. St. Cyr*, the BIA remanded Igwe's case to allow him the opportunity to reapply for § 212(c) relief.

On March 4, 2004, following a jury trial, Igwe was convicted of four counts of unauthorized practice of medicine, in violation of Mich. Comp. Law § 333.16294, for conduct committed on August 14, 2000; March 14, 2001; March 21, 2001; and August 20, 2001. Blue Cross/Blue Shield also initiated a civil action against Igwe, which he ultimately settled for $70,000. In March 2005, the Government filed a second I-261, alleging an additional fact related to Igwe's 2004 convictions and adding a new charge of removability under INA § 212(a)(2)(C)[5] (controlled substance trafficker).[6] Igwe admitted the factual allegation but denied the removability charge.

---

[5] The I-261 Form specifies that this charge was based on Igwe's March 2004 convictions for practicing medicine without a license. The offense conduct involved prescribing Tylenol 3, which contains an opioid pain killer. This removability charge was replaced in 2013 by an I-261

### B. The September 21, 2005 Immigration Judge Decision

On September 21, 2005, the IJ again denied Igwe's § 212(c) waiver request, finding that Igwe was ineligible to apply for such relief because his 1994 conviction for conspiracy to defraud Blue Cross/Blue Shield constituted an aggravated felony as defined in INA § 101(a)(43)(M)(i).[7] According to the law at the time, lawful permanent residents were only eligible for § 212(c) relief if the charges of deportability against them had a substantially equivalent ground of inadmissibility. *In re: Blake*, 23 I. & N. Dec. 722, 729 (BIA 2005). The IJ then found that Igwe's aggravated felony conviction had no comparable grounds of removability, and thus Igwe was not eligible for § 212(c) relief. The IJ further found that even if Igwe were eligible for such relief, the IJ could not foresee any circumstances under which Igwe merited a favorable exercise of discretion. Igwe was again ordered removed to Nigeria. Igwe appealed the IJ's decision, and on February 29, 2008, the BIA remanded the matter, finding that because Igwe was not charged with removability for an aggravated felony under INA § 101(a)(43)(M)(i) or (a)(43)(U), 8 U.S.C. § 1101(a)(43)(M)(i) or (a)(43)(U),[8] his convictions did not bar § 212(c) relief.

---

charge of controlled substance trafficker predicated on Igwe's 1994 conviction for delivery of a controlled substance.

[6] A controlled substance trafficker is "Any alien who the consular officer or the Attorney General knows or has reason to believe (i) is or has been an illicit trafficker in any controlled substance or in any listed chemical (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, or endeavored to do so." § 212(a)(2)(C).

[7] An aggravated felony is a crime involving "fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i).

[8] "The term 'aggravated felony' means: (M)(i) an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000 . . . (U) an attempt or conspiracy to commit an offense described in this paragraph." INA § 101(a)(43)(M)(i) or (a)(43)(U).

## C. The September 22, 2010 Immigration Judge Decision

In March 2009, the Government filed a third I-261, alleging an additional fact, which Igwe admitted, and an additional removability charge, which it ultimately withdrew. Igwe also renewed his § 212(c) waiver request and applied for adjustment of status along with an INA § 212(h)[9] waiver to remedy the possibility that his 2004 convictions rendered him ineligible for the adjustment.

On September 22, 2010, the IJ held that Igwe was statutorily eligible for § 212(c) relief for his 1994 convictions, but ultimately denied such relief as a matter of discretion, citing the gravity and extensive nature of Igwe's criminal history and his lack of candor, rehabilitation, and genuine remorse. The IJ then found Igwe statutorily ineligible for § 212(h) relief as a result of the aggravated-felony bar, applicable due to Igwe's convictions for aggravated felonies, discussed above. Even if the aggravated-felony bar did not apply, the IJ found, Igwe would still be statutorily ineligible for § 212(h) relief because the waiver did not apply to those convicted of § 212(a)(2)(C) (controlled substance trafficker) charges and Igwe was not charged with "a single

---

[9] INA § 212(h) states, in relevant part: "The Attorney General may, in his discretion, waive the application of subparagraphs (A)(i)(I), (B), (D), and (E) of subsection (a)(2) and subparagraph (A)(i)(II) of such subsection insofar as it relates to a single offense of simple possession of 30 grams or less or marijuana if- (1)(A) in the case of any immigrant it is established to the satisfaction of the Attorney General that- (i) the alien is inadmissible only under subparagraph (D)(i) or (D)(ii) of each subsection or the activities for which the alien is inadmissible occurred more than 15 years before the date of the alien's application for a visa, admission, or adjustment of status; (ii) the admission to the United State of such alien would not be contrary to the national welfare, safety, or security of the United States, and (iii) the alien has been rehabilitated; or (B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien."

offense of simple possession of 30 grams or less of marijuana." Further, the IJ found that Igwe did not establish that he warranted a favorable exercise of discretion.

The IJ denied Igwe's applications for relief under § 212(c) and (h), denied his application for adjustment of status under § 245(a), and ordered Igwe be removed to Nigeria.

Igwe again appealed, and while his appeal was pending, the Supreme Court held that a returning lawful permanent resident cannot be charged with inadmissibility pursuant to 8 U.S.C. § 1101(a)(13)(C)(v) [10] based on conduct that preceded the enactment of that provision. *Vartelas v. Holder*, 132 S.Ct. 1479, 1484, 182 L.Ed.2d 473 (2012) (the impact of brief travel abroad on one's lawful permanent residence status is determined by the legal precedent at the time of his conviction, not by the Illegal Immigrant Reform and Immigrant Responsibility Act of 1996 (IIRIRA)). "Offenses in this category include a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime." *Id*. at 1485 (internal quotation marks omitted). On April 17, 2013, in light of *Vartelas*, the BIA again remanded Igwe's case, finding that Igwe may have been improperly charged with inadmissibility. The BIA instructed the IJ to further develop the *Vartelas* issue and to conduct additional proceedings as necessary and appropriate, including addressing Igwe's now-open question of removability.

---

[10] "An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien . . . (v) has committed an offense identified in section 1182(a)(2) of this title, unless since such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title." 8 U.S.C. § 1101(a)(13)(C)(v).

### D.  The November 25, 2013 Immigration Judge Decision

The Government submitted a fourth I-261 on remand, substituting all formerly-filed charges with three § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii) (aggravated felony)[11] charges, one § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i) (controlled substance)[12] charge, and one § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii) (crimes involving moral turpitude)[13] charge. Igwe conceded the aggravated felony and controlled substances charges, but denied the charge of removability for crimes involving moral turpitude.  The I-261 further replaced all factual allegations other than that Igwe is a native and citizen of Nigeria.

The final IJ decision, issued on November 25, 2013, found that Igwe was convicted of two crimes involving moral turpitude, and therefore removable.[14]  The IJ reiterated his previous finding that Igwe is statutorily eligible for § 212(c) relief, but, in addition to addressing Igwe's new arguments,[15] incorporated the reasoning from the September 22, 2010 decision to again

---

[11] The aggravated felony charges were based on Igwe's: 1) 1994 conviction for delivery of a controlled substance in violation of Mich. Comp. Law § 333.7401(2)(b); 2) 1994 conspiracy to defraud Blue Cross/Blue Shield in violation of Mich. Comp. Law § 752.1005; and 3) 1994 conviction of making a false claim for the payment of health care benefits, in violation of Mich. Comp. Law § 752.1003(1).

[12] The controlled substance charge is based on Igwe's 1994 conviction for delivery of a schedule III controlled substance (Tylenol 3 and/or Vicodin), in violation of Mich. Comp. Law § 333.7401(2)(b).

[13] The charge that Igwe committed crimes involving moral turpitude was based on his 1994 and 2004 convictions for practicing medicine without a license.

[14] INA § 237(a)(2)(A)(ii) renders deportable any alien "who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial."

[15] On remand, Igwe asserted that (1) the IJ overlooked that he (and his wife) sought legal advice following his 1994 convictions and that Igwe thought he was following the law, and (2) that he showed remorse by repeatedly apologizing to the court.  In response, the IJ first found that without more than a legal opinion letter written for another individual with different qualifications and not specifically addressed to Igwe and his particular circumstances, Igwe's 2004 convictions evidenced recidivism rather than rehabilitation.  The IJ also found that Igwe's

deny Igwe's § 212(c) application as a matter of discretion. In discussing the new evidence presented, the IJ concluded that Igwe had continued practicing medicine without a license and thus had not been rehabilitated. Though the IJ found several positive discretionary factors, including Igwe's extremely long residence in the United States and his commitment to his family and his church, the IJ ultimately determined that those factors were outweighed by Igwe's "evasive" testimony, lack of sincerity, criminal history, and continuing criminal activity. Moreover, the IJ concluded that Igwe's and his wife's strong ties to Nigeria, Mrs. Igwe's testimony that both she and their youngest son would accompany Igwe to Nigeria if he were removed, and the Igwe's "ample assets," would greatly diminish any emotional and financial strain associated with removal to Nigeria. The IJ thus denied Igwe's application for § 212(c) relief and ordered his removal to Nigeria.

### E.  Igwe's Final Appeal to the BIA and the Board's December 4, 2014 Decision

On Igwe's fourth and final appeal, the BIA affirmed the IJ. The BIA agreed with the IJ that Igwe put others at risk by practicing medicine without a license and that he failed to show remorse for these actions or rehabilitation. The BIA found that the record supports the IJ's decision not to exercise his discretion in Igwe's favor, and therefore found no reason to disturb that decision.

Igwe filed a timely petition for review with this court and subsequently filed a motion to stay removal, a supplemental motion to stay removal, and an emergency motion to stay removal. In response, the Government filed a motion to dismiss the petition for lack of jurisdiction. *Igwe*

---

testimony suggested he was sorry for being caught, rather than for his wrongful conduct, noting that Igwe attempted to justify his actions "every time he [was] given the opportunity to exhibit regret."

*v. Holder*, No. 14-4292 (6th Cir. Feb. 19, 2015). This court denied the motions to dismiss and for a stay of removal, and Igwe has since been removed to Nigeria.

Igwe raises three claims in his petition for review. First, he argues that the IJ erred in exercising his discretion to deny Igwe's application for § 212(c) relief by (1) relying on disputed and unproven allegations of harm caused by Igwe's practice of medicine without a license, misapplying both BIA and Sixth Circuit precedent; (2) concluding that Igwe's convictions for unlawful delivery of a controlled substance and practicing medicine without a license involved fraudulent conduct, which Igwe contends they do not; and (3) concluding that Igwe's convictions for practicing medicine without a license constituted crimes involving moral turpitude, despite the Government's concession that they did not. Second, he asserts that the BIA erred in treating Igwe's counsel's statements in his appellate brief as evidence of Igwe's lack of remorse. Finally, Igwe argues that these errors substantially prejudiced him.

## II. ANALYSIS

### A. Standard of Review

Where, as here, the BIA "adopts the IJ's reasoning and supplements the IJ's opinion, that opinion, as supplemented by the BIA, becomes the basis for review." *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014) (quoting *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009)). "This court 'directly reviews the decision of the IJ while considering the additional comment made by the BIA.'" *Id.* (quoting *Zhao*, 569 F.3d at 246 (quoting *Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007))); *see also Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) ("To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision.").

This court has limited jurisdiction to review a final order of removal under INA § 242, 8 U.S.C. § 1252. We review only "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D), and are barred from reviewing purely discretionary decisions, *id*. § 1252(a)(2)(B). Questions of law include claims that require either "resolution of a contested interpretation of language in the statute or the regulations" or "an evaluation of whether the BIA adhered to legal standards or rules of decision articulated in its published precedent." *Ettienne v. Holder*, 659 F.3d 513, 517 (6th Cir. 2011).

The decision to grant § 212(c) relief is a matter of discretion that requires the IJ to balance "adverse factors of record evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf." *In re Marin*, 16 I. & N. Dec. 581, 584 (BIA 1978). Absent a constitutional claim or a question of law, we have no jurisdiction to review the IJ's discretionary denial of § 212(c) relief.

**B. IJ did not misapply precedent and therefore did not commit legal error.**

Igwe first asserts that the IJ's reliance on unproven allegations that he intentionally put others' lives at risk by practicing medicine without a license, specifically focusing on the letter of one of Igwe's former patients, Roosevelt McKinney, Jr. (McKinney), explaining the harms that resulted from Igwe's practicing medicine without a license, was legal error. These unproven allegations, according to Igwe, stem solely from a letter McKinney submitted to the sentencing court regarding Igwe's 2004 convictions. The Government responds that the IJ did not rely on unproven allegations, but instead properly considered Igwe's criminal convictions in determining whether Igwe merited a discretionary grant of relief.

Whether the IJ ignored binding BIA precedent by relying on unproven allegations in making a discretionary denial of an application for relief is a legal question reviewable by this

court. *See Ettienne*, 659 F.3d at 517 (noting that this court has interpreted 8 U.S.C. § 1252 "to permit review of a BIA decision in which the Board allegedly failed to follow its own precedent") (citing *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008)).

In *Billeke-Tolosa v. Ashcroft*, this court held that the IJ improperly relied on unproven allegations of sexual misconduct where Billeke-Tolosa "was not convicted of any such crime, denied committing such a crime, and was confronted with no independent evidence suggesting otherwise." 385 F.3d 708, 712 (6th Cir. 2004) (*see In re Catalina Arreguin De Rodriguez*, 21 I. & N. Dec. 38, 42 (BIA 1995) (giving "little weight" to an arrest report "absent a conviction or corroborating evidence of the allegations contained therein" where applicant admitted no wrongdoing.). This court held that the IJ's reliance was necessarily prejudicial because "the IJ suggested that Billeke-Tolosoa would have received discretionary relief, but for factors that the IJ was not permitted to consider," namely the unproven allegations of sexual misconduct. *Billeke-Tolosa*, 385 F.3d at 713.

Here, unlike in *Billeke-Tolosa*, the letter described harms resulting from conduct for which Igwe was convicted. Moreover, the IJ considered a number of other negative factors, including Igwe's prior criminal conduct, his "lack of candor with the Court and his family and friends, and his lack of rehabilitation and genuine remorse." Indeed, the IJ mentioned McKinney only twice in this discussion, first as an example of the risk involved to others' lives when one misrepresents oneself as a trained medical doctor, and once as an example of Igwe's failure to "express any remorse or responsibility."

The IJ did not rely on unproven allegations in deciding not to exercise his discretion in Igwe's favor, and therefore did not commit legal error.

### C. Igwe's claim that the IJ erroneously categorized some of his convictions as involving fraudulent conduct and/or moral turpitude are not questions of law reviewable by this court.

Igwe next asserts that the IJ erred as a matter of law in concluding that practicing medicine without a license and unlawful delivery of a controlled substance are crimes involving fraudulent conduct. Igwe asserts that as a matter of statutory construction, this claim is reviewable by this court. He points out that fraud is not included in the statutory elements of the offenses, and therefore the IJ erred. Further, Igwe asserts that because the Government "conceded"[16] during the 2013 removal proceedings that practicing medicine without a license was not a crime of moral turpitude, the IJ erred by labeling it as such. The Government responds that this is merely a challenge to the weight the IJ assigned Igwe's criminal history in exercising discretion to deny relief, and as such is not reviewable by this court.

Upon establishing eligibility, the applicant must also demonstrate that he merits a favorable exercise of discretion. *In re Marin*, 16 I. & N. Dec. at 584-85 (BIA 1978). Because Igwe's eligibility for § 212(c) relief is not disputed, the IJ noted that "this case centers on the discretionary balance of factors within the framework of *Marin*." Factors weighing in favor of the applicant include residence in the United States for longer seven years, evidence of hardship to the applicant and family if deportation occurs, employment history, property or business ties, evidence of value and service to the community, evidence attesting to the applicant's good character, and, importantly, "proof of a genuine rehabilitation if a criminal record exists." On the other hand, adverse discretionary factors include "the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's

---

[16] Rather than conceding this point, the Government withdrew its argument that the offense constitutes a crime involving moral turpitude.

immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident" of the United States.

In considering Igwe's criminal history, the IJ quoted extensively from the September 22, 2010 decision, which found that that Igwe's crimes "are extremely serious, clearly establishing he poses a serious risk to the health and well-being of others – including his patients and his family. They involve fraud and indicate the relative ease in which he intentionally deceives individuals," and that "[h]is criminal history generally, and the very nature of his crimes, reflects a pervasive attitude of lawlessness." The 2010 decision further noted that "The morally turpitudinous nature of his offenses indicates his callous and corrupt character," and then went on to find that Igwe intentionally put others' lives at risk, lacked candor and remorse, and failed to take responsibility for his actions over the extended history of the case. The IJ adopted the reasoning of the 2010 decision and further found the new evidence and reasoning Igwe presented on remand to be unpersuasive.

As the government correctly notes, because we deal here with a § 212(c) discretionary determination, not a question of Igwe's eligibility for the waiver, whether Igwe's convictions are a categorical or modified-categorical match to the relevant INA definitions is not pertinent, as it would be for removal purposes. *See Yeremin v. Holder*, 738 F.3d 708, 715 (6th Cir. 2013) (describing the categorical and modified-categorical analysis). Thus, although normally the determination "whether a conviction under a particular statute qualifies as a crime involving moral turpitude is a question of law and thus is subject to judicial review," *Id*. at 713, when determining if an alien merits favorable discretion for the waiver, the IJ's statement regarding the "moral turpitudinous nature" of Igwe's convictions is not a legal determination reviewable by

this court, but is rather an observation regarding the character of his behavior, a factor relevant to

the IJ's nonreviewable exercise of discretion.

We therefore dismiss these claims for lack of jurisdiction.

**D. The BIA did not commit legal error in treating Igwe's counsel's statement as evidence because the panel improperly cited to Igwe's appellate brief rather than to the IJ's decision and May 31, 2013 transcript of immigration hearing.**

Igwe next argues that the BIA committed legal error in treating Igwe's attorney's

statements in his appellate brief as evidence that Igwe failed to establish remorse or rehabilitation

since his 1994 convictions. Igwe frames this assertion not as a challenge to the BIA's

determination that he failed to establish genuine remorse or rehabilitation, but rather argues that

"the BIA made a legal error in the course of making that determination," and therefore claims

that the claim is reviewable by this court. *Gjyzi v. Ashcroft*, 386 F.3d 710, 714 (6th Cir. 2004)

(noting that this is "an important distinction, because, as a matter of due process, assigning

complete discretion to an agency to apply the law does not allow that decisionmaker to ignore

the law."). The Government responds that Igwe relies on inapposite authority and that it is

permissible for the BIA to rely on a combination of Igwe's testimony and arguments set forth in

his appellate briefs to determine that Igwe has not shown remorse or rehabilitation.

In dismissing Igwe's appeal from the IJ's decision to deny § 212(c) relief, the BIA agreed

that Igwe did not show genuine remorse or rehabilitation, citing a portion of the IJ's decision in

which the IJ discussed the "lack of remorse and failure to accept responsibility" evident

"throughout [Igwe's] testimony." The IJ stated that Igwe, rather than "acknowledging his

remorse and fault, . . . discussed 'the good' he has done" through his operation of the clinic.

Among other things, the IJ notes that "while his case was pending in this Court and *after* he had

asked this Court to look upon him favorably and grant his § 212(c) waiver," Igwe was again

convicted of practicing medicine without a license in 2004. The IJ concluded that these actions evidenced Igwe's "complete lack of rehabilitation – not to mention his rehabilitative potential."

In reviewing and agreeing with the IJ's decision, the BIA did, as Igwe asserts, note that Igwe continued to insist that he "did good work" in his appellate brief. However, the BIA relied on more than the statements in Igwe's brief in making its finding that Igwe did not show genuine remorse or rehabilitation. Igwe testified to the importance of his work in the community during his immigration hearings, to which the BIA and the IJ cited in support of the relevant finding. By favorably citing to the IJ's discussion of the various statements made by Igwe evidencing his lack of remorse and rehabilitation, the BIA adopted the IJ's reasoning, itself based in large part on these statements. As the Government points out, the authority Igwe relies on holds that it is impermissible to base a determination on the statements of counsel when there is no other evidence in the record to support the determination, *see In re S-M-*, 22 I. & N. Dec. 49, 51 (BIA 1998), which is not the case here.

Therefore, we find no error.

### E.  Igwe was not substantially prejudiced.

Igwe finally asserts that the IJ's and the BIA's legal errors substantially prejudiced their exercise of discretion. However, because we find that the IJ and the BIA did not err, we need not address this argument.

### III.

For these reasons, we **DISMISS** the petition in part for lack of jurisdiction and **DENY** the remainder of the petition.